UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIYKAEL MUHAMMAD, formerly known through involuntary servitude as Michael Gardner, | )<br>)<br>) 13 C 8227 |
| Plaintiff, | )<br>) |
| | ) Judge Feinerman |
| vs. | )<br>) |
| ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES, MARY MILLER, ANJANETTE JESSE, and PAT QUINN, | )<br>)<br>)<br>) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Denied a United States passport because of what the Illinois Department of Healthcare and Family Services ("IDHFS") told the United States Department of State was more than $2,500 in delinquent child support payments, *see* 42 U.S.C. §§ 652(k)(1), (2) ("If the Secretary receives a certification by a State agency … that an individual owes arrearages of child support in an amount exceeding $2,500, the … Secretary of State shall … refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual."), Miykael Muhammad sued IDHFS, IDHFS employee Anjanette Jesse, and some federal passport agents, alleging that the denial violated various federal statutes, constitutional provisions, and treaties. Doc. 6. Muhammad voluntarily dismissed his claims against the federal defendants, and then added IDHFS employee Mary Miler and Illinois Governor Pat Quinn as defendants. Docs. 15, 20, 49, 56. The second amended complaint, which is the operative pleading, alleges emphatically that the three remaining individual defendants—Jesse, Miller, and Quinn—are sued only in their individual capacities; the only relief it requests is injunctive relief (the delivery of his passport) and a declaration that the denial of his passport violates federal law.

1

Doc. 56 at 3, 8-9. Defendants filed a motion for summary judgment, Doc. 54, which the court construed to be a hybrid motion to dismiss/motion for summary judgment, Doc. 65. The motion is granted, and the suit is dismissed.

**Background**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept the second amended complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Muhammad's favor, but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [second amended] complaint, documents that are critical to the [second amended] complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Muhammad's briefs opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Muhammad as those materials permit. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). Any genuine dispute of material fact is resolved in Muhammad's favor. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012).

In September 2013, Muhammad applied for a United States passport. Doc. 56 at 3, ¶ 2. When Muhammad went to pick it up, an agent, handing him a letter, told him that he was ineligible to receive a passport in part because he had an unpaid child support obligation. *Id*. at 3-4, ¶ 3; Doc. 6 at 19-20 (the letter). Indeed, IDHFS had determined that Muhammad owed roughly $13,000 in unpaid child support. Doc. 72 at 1, ¶ 8; *id*. at 3, ¶ 21; Doc. 54-10 at 1 (listing debt of $13,031.63 as of September 30, 2013). IDHFS's records identify a "Michael Gardner," not Muhammad, as the obligor, and Muhammad's name appears nowhere on the child support order. Doc. 72 at 4-5. Yet in the caption of his original complaint, Muhammad acknowledged

that he was "formerly known through involuntary servitude as Michael Gardner." Doc. 6 at 1. Moreover, Muhammad attached to his operative complaint a Chapter 7 discharge order for a Michael Gardner and a bankruptcy schedule for a Michael Gardner listing a $13,000 debt to the state court that imposed the child support obligations. Doc. 56 at 41-42.

**Discussion**

Defendants argue that all of Muhammad's claims are barred by the Eleventh Amendment. *See* U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States[.]"). The Seventh Circuit has cautioned that "[i]t is both unnecessary and inappropriate to decide whether the Constitution would prevent litigation that Congress has not authorized in the first place." *Holton v. Ind. Horse Racing Comm'n*, 398 F.3d 928, 929 (7th Cir. 2005) (citing *Lapides v. Univ. of Georgia*, 535 U.S. 613, 617-18 (2002)). Accordingly, courts "have routinely addressed *before* the question whether the Eleventh Amendment forbids a particular statutory cause of action to be asserted against States, the question whether the statute itself *permits* the cause of action it creates to be asserted against States (which it can do only by clearly expressing such an intent). When these two questions are at issue, … the statutory question [is] 'logically antecedent to the existence of' the Eleventh Amendment question[.]" *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 779 (2000) (citations omitted).

Although Muhammad does not explicitly state the statutory basis for his suit, the only reasonable possibility is 42 U.S.C. § 1983. Doc. 56 at 2-3, ¶¶ 2-5 (noting that each defendant has allegedly violated "the Civil Rights Acts"). Because IDHFS is a state agency, *see* 20 ILCS 5/5-15 ("The Departments of State government are created as follows: … The Department of

Healthcare and Family Services."), it is not a "person" suable under § 1983.  *See Holton*, 398 F.3d at 929 ("The Commission, which is part of Indiana's state government, is not a 'person' for purposes of § 1983.").  It follows that Muhammad has no viable claim against IDHFS.

As for the individual defendants, the Eleventh Amendment "bars actions in federal court against … state officials acting in their official capacities." *Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010) (en banc) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  In an apparent effort to plead around the Eleventh Amendment, the operative complaint says of each individual defendant: "**This defendant is being sued in their individual capacity as a violator of the Civil Rights Acts and has no immunity**."  Doc. 56 at 3, ¶¶ 3-5 (bold in original).  Muhammad's characterization of his claims against the individual defendants—which can and will be respected, *see Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (holding that although "the pleadings of *pro se* plaintiffs should be liberally construed, … even *pro se* litigants are masters of their own complaints")— simply walks him into a different problem.  Injunctive relief, while available against state officials sued in their *official* capacities, *see Ex parte Young*, 209 U.S. 123, 159-60 (1908),[*] is unavailable under § 1983 against state officials sued in their *individual* capacities.  *See*

---

[*] The *Young* doctrine is inapplicable to state agencies.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.  This jurisdictional bar applies regardless of the nature of the relief sought.") (citations omitted).  This means that even if IDHFS were considered a "person" under § 1983, or even if Muhammad were suing IDHFS under some other statute, the Eleventh Amendment still would bar his claims against the agency.  *See Gleason v. Bd. of Educ. of City of Chicago*, 792 F.2d 76, 79 (7th Cir. 1986) ("The eleventh amendment 'prohibits federal courts from entertaining suits by private parties against States and their agencies.'  'This jurisdictional bar applies regardless of the nature of the relief sought.'  The State Board, an Illinois state agency, is therefore absolutely immune from liability under 42 U.S.C. § 1983.") (quoting *Alabama v. Pugh*, 438 U.S. 781, 782 (1978), and *Pennhurst*, 465 U.S. at 100).

*Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity"); *Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002) ("Contrary to the district court's assertion, the fact that Ameritech sued McCann in his official capacity does not render *Young* inapposite. In fact, the opposite is true—a case may proceed under the *Young* exception only when a state official is sued in his official capacity."); *Luder v. Endicott*, 253 F.3d 1020, 1022-23 (7th Cir. 2001). Yet Muhammad's "Demand for Remedy" does not seek monetary damages, which are not barred by the Eleventh Amendment; rather, it seeks only injunctive relief and declaratory relief in aid of injunctive relief—namely, a declaration that his federal rights have been violated, which is a predicate of his request for injunctive relief. Doc. 56 at 8-9, ¶¶ 24-31. It necessarily follows that Muhammad's claims against the individual defendants fail.

Muhammad's claims against the individual defendants therefore fail. But even if those claims were not so barred—even if the court were wrong to conclude that § 1983 does not permit Muhammad to pursue claims for injunctive relief against the individual defendants in their individual capacities; even if Muhammad had sued the individual defendants in their individual capacities for monetary damages, which would not be barred by sovereign immunity, *see Luder*, 253 F.3d at 1022-23; or even if the court construed Muhammad's complaint, contrary to his own explicit disclaimer, as one for prospective injunctive relief against the individual defendants in their official capacities under *Ex parte Young*—his suit would easily fail on the merits.

In contending that he has no child support obligation, Muhammad appears to suggest that the obligation was discharged in his Chapter 7 bankruptcy proceeding. Doc. 72 at 2-3, ¶¶ 14-19. That suggestion is implausible, as the child support obligation neither was nor could have been

5

discharged in bankruptcy.  *See* "Discharge of Debtor," *In re Michael Gardner*, No. 12 B 44331 (Bankr. N.D. Ill. Feb. 20, 2013), ECF No. 24, at 2 ("Some of the common types of debts which are not discharged in a chapter 7 bankruptcy are: … [d]ebts that are domestic support obligations[.]"); 11 U.S.C. § 523(a)(5) ("A discharge under [Chapter 7] … does not discharge an individual debtor from any debt … for a domestic support obligation[.]"); *In re Crosswhite*, 148 F.3d 879, 882 & n.2 (7th Cir. 1998) (same).

Muhammad next challenges the child support order's validity on the ground that Illinois lacked jurisdiction to impose it on him.  Muhammad claims to be "a member of the Aboriginal Republic of North America Cherokee-Choctaw Nation" (also known as the "Xi-Amaru" Tribe, Doc. 56 at 22), and argues that, under the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1901 *et seq.*, the tribal court had exclusive jurisdiction over his child support dispute.  Doc. 72 at 6. Assuming that Muhammad truly is a member of that tribe, and further assuming that the federal government recognizes the tribe, *but see* Dep't of the Interior, Bureau of Indian Affairs, "Indian Entities Recognized and Eligible to Receive Services from the United States Bureau of Indian Affairs," 79 Fed. Reg. 4748, 4749-53 (Jan. 29, 2014) (not listing a "Cherokee-Choctaw Nation" or "Xi-Amaru Tribe"), the ICWA does not preclude Illinois's exercise of jurisdiction over Gardner's child support action.  The relevant portion of the ICWA reads: "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child *who resides or is domiciled within the reservation of such tribe*, except where such jurisdiction is otherwise vested in the State by existing Federal law."  25 U.S.C. § 1911(a) (emphasis added); *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 53 (1989); *In re Adoption of S.S.*, 657 N.E.2d 935, 940 (Ill. 1995).  Muhammad does not contend that he, the child, or the child's mother ever resided or was domiciled in a tribal reservation.  Therefore, the

6

tribe, if it exists, did not have exclusive jurisdiction over the child support proceedings. *See Adoption of S.S.*, 657 N.E.2d at 940. Moreover, pursuant to Bureau of Indian Affairs guidelines, the ICWA would be inapplicable for the additional reason that the proceeding was between the child's parents. *See* Dep't of the Interior, Bureau of Indian Affairs, "Guidelines for State Courts," § B.3, 44 Fed. Reg. 67584, 67587 (Nov. 26, 1979) ("Child custody disputes arising in the context of divorce or separation proceedings or similar domestic relations proceedings are not covered by the Act so long as custody is awarded to one of the parents."); *id.* § B.3 Commentary ("the Act is directed primarily at attempts to place someone other than the parent or Indian custodian in charge of raising an Indian child"). The court notes that Muhammad has had ample opportunity to contest his child support order in state court, including on jurisdictional grounds, and that the Appellate Court of Illinois dismissed his latest appeal earlier this year. Docs. 54-3, 54-4, 54-5.

Finally, Muhammad contends that the name "Miykael Muhammad" does not appear on the child support order, or on the state court docket, or in the federal bankruptcy case—and that therefore "Michael Gardner's" debt should not prevent "Miykael Muhammad" from obtaining a passport. Doc. 72 at 4-6. Yet Muhammad does not deny that he is the person formerly known as Michael Gardner. And if he were to try to deny that, no reasonable person would believe him. After all, *he* identified himself as "Miykael Muhammad formerly known through involuntary servitude as Michael Gardner" in the caption of his initial complaint, Doc. 6 at 1, and *he* has attached materials from Gardner's bankruptcy case to his complaints, *id*. at 28-36; Doc. 56 at 38-45. So his allegation that Defendants "falsely claim[ed] (without providing proof) that the name Miykael Muhammad was on a list" of child support obligors, Doc. 56 at 4, ¶ 4, is implausible and thus fails to state a claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("[O]nly

7

a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.") (citation omitted). Muhammad cannot shed his child support obligations simply by shedding his name.

**Conclusion**

For the foregoing reasons, Defendants' summary judgment motion is granted. Muhammad's claims are dismissed. Leave to amend is not allowed because Muhammad did not request such leave and because, even if he had, any amendment would be futile.

December 17, 2014

United States District Judge